ROBERT P. SMITH, Jr., Judge.
McNeil appeals from his convictions, after a jury trial, for grand theft, sec. 812.-014(2)(b)l, Fla.Stat. (1981), and tampering with evidence, sec. 918.13(l)(a), Fla.Stat. (1981). We find no infirmity in the former conviction, see sec. 812.012(9)(a)l, Fla.Stat. (1981), but find that the latter conviction cannot be sustained.
On September 23, 1981, McNeil came to the Panama City police department at the request of Detective Michael Jones, who was investigating the theft of two automobile tires from Sylvester Stewart the month before. McNeil was advised of his Miranda rights and signed a rights waiver form in the presence of Jones and a second officer. In response to questioning, McNeil then stated that he had bought the two tires found on his car, which were in fact the stolen tires, from a fellow named Smith some two months earlier.
Suspending the interrogation, Detective Jones stepped out of the interview room to discuss the case with another officer. He left on the desk both the signed Miranda rights waiver form and the victim’s purchase receipt for the tires, showing the amount and date of purchase. While Jones *962 was out, Officer Winterman, who was watching McNeil, saw him throw something in the trash can. That something turned out to be the signed rights waiver form, torn into pieces. That act of shredding the form is the basis for charging that McNeil violated section 918.13(l)(a), Florida Statutes (1981):
No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting attorney (or) law enforcement agency ... is pending or is about to be instituted, shall:
(a) Alter (or) destroy ... any record, document, or thing with the purpose to impair its verity or availability in such proceeding or investigation.
As the statute makes clear, “tampering with evidence” is a specific intent crime. See Rader v. State, 420 So.2d 110 (Fla. 4th DCA 1982); State v. News-Press Publishing Company, 338 So.2d 1313 (Fla. 2d DCA 1976). The Florida statute was adopted verbatim from the American Law Institute’s MODEL PENAL CODE AND COMMENTARIES, section 241.7 (1980), which explains:
The limiting factor in Paragraph (a) is the requirement of specific intent. The statute punishes any kind of tampering with any document or thing but only if the defendant acts “with purpose to impair its verity or availability” in an official proceeding or investigation. This designation of specific purpose identifies the ultimate evil as obstruction of justice rather than destruction of property and restricts the scope of the offense to persons who consciously intend to commit the forbidden harm.
Thus, McNeil cannot be convicted of this offense unless it is proved beyond a reasonable doubt that he committed the act with the requisite specific intent “to impair its verity or availability” in a “criminal trial or proceeding or an investigation.” The shredding of the form does not of itself raise a presumption that it was done with such a purpose. See Simpson v. State, 81 Fla. 292, 87 So. 920 (1921); Richard v. State, 181 So.2d 677 (Fla. 3d DCA 1966); Newman v. State, 174 So.2d 479 (Fla. 2d DCA 1965).
The statute is designedly broad in reach. Its principal limitation upon that reach is a requirement that the proscribed act or acts be done with the specified purpose. The statute cannot be extended in application to persons, things or acts not within its descriptive terms. Earnest v. State, 351 So.2d 957 (Fla.1977). The question, then, is whether the evidence of McNeil’s purpose was susceptible of being regarded by a jury as proof of the forbidden purpose beyond a reasonable doubt. Here there is that reasonable doubt.
Signing a document such as this is generally deemed sufficient evidence of a voluntary and intelligent waiver of one’s constitutional right not to be questioned, or not questioned without a lawyer present, concerning one’s guilt of the offense suspected. See Witt v. State, 342 So.2d 497 (Fla.1977); Battle v. State, 338 So.2d 1107 (Fla. 3d DCA 1976); Dixon v. State, 305 So.2d 250 (Fla. 2d DCA 1974). Yet the act of signing a rights waiver form is not irrevocable; signing does not require the signer against his will to submit to questions. If a defendant at any time or in any manner indicates to the interrogating officers that he wishes to remain silent despite his prior waiver, interrogation must cease. Miranda v. Arizona, 384 U.S. 436, 473-74, 86 S.Ct. 1602, 1627-28, 16 L.Ed.2d 694, 723 (1966). “The critical safeguard identified in (Miranda) is a person’s ‘right to cut off questioning.’ ” Michigan v. Moseley, 423 U.S. 96, 103, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 321 (1975).
The constitutional privilege against self-incrimination therefore includes a privilege to revoke its prior waiver. Revocation is not, of course, abrogation; to revoke a prior waiver, after answering interrogation, does not retrieve the answers again into a protected status. But the question is not what effect the shredding in law had upon McNeil’s prior answers, but what McNeil in fact intended by the act, either insightfully or futilely.
*963 On the critical issue we have both McNeil’s testimony and circumstantial evidence. McNeil declared that his shredding of the paper was, he thought, the rough equivalent of revoking, or indeed abrogating, the waiver previously given. McNeil’s act is commensurate with such a purpose, as his testimony reflects:
Well, I thought by signing the form that maybe I could give a statement of where I really got the stuff from and explain to him, you know, that I’m not guilty. I didn’t know by me signing the form I was, you know, admitting guilt or anything....
When (Detective Jones) left the room after Detective Slusser said lock his — excuse it — lock him up, I felt like I had been done wrong, because I did not steal the tires. I felt like that I might have, you know, committed myself, you know, to be incarcerated. So the first thing came to my mind — I was wrong for tearing it up — the first thing that came to my mind was: Before I signed this Waiver of Rights form everything was alright, but as soon as I sign this form they want to lock me up. I said, what I do, I just tear it up.
In effect, McNeil thus admitted that he intended to “impair” the “verity” of his prior waiver in the sense of abrogating that waiver. But as we have seen, McNeil was constitutionally privileged to revoke his waiver, and could have done so either by a verbal declaration or, we may assume, by writing “revoked” on the paper itself. As the statute cannot constitutionally be read as making a criminal offense of “impairing” the “verity” of a signed waiver form in this sense, it would be strange indeed to acquit McNeil if he had written “revoked” but convict him if he had written, instead, “null and void.” The fault of such a conviction would be its attributing to McNeil knowledge of the difference between “revoked” and “null and void,” so differentiating a purpose of reasserting his constitutional privilege from a purpose of “impairing” the “verity” of a waiver previously given and exploited.
The thoroughness of McNeil’s tearing of the document, and the consequent smallness of the fragments retrieved from the waste can, could of course bé considered as evidencing a purpose not only (ineffectually) to nullify his prior consent but also to “impair” the document’s “availability in such proceeding or investigation.” Yet that is an uncertain inference, because it cannot be assumed that McNeil knew the evidentiary value of the document as do law enforcement officers and prosecutors.* Nothing in the record is persuasive that McNeil, thinking at the time that what he said might be used against him as evidence, pondered also that the document by which he submitted to questioning was in fact evidentiary material in a prosecution for theft. If McNeil thought to destroy evidence, he did a poor job of it; the shredded paper, retrieved from the trash can, is of course now in evidence.
Other circumstantial evidence in the record persuades us that the jury could not properly have found beyond a reasonable doubt that McNeil’s specific purpose in shredding the waiver form was to “impair” its “availability” as proof in “such proceeding or investigation.” For when the interrogator left McNeil alone in the room, the interrogator left on the table not only the executed waiver form but also the sales receipt for the tires, showing the victim’s true ownership, which would more obviously seem to undiscriminating eyes to be evi-dentiary material important to the substantive investigation at hand. McNeil declared on the witness stand that “If I wanted to destroy evidence, I would have destroyed the receipt instead of the Waiver of Rights.” We credit that assertion not because McNeil so testified but because, circumstantially, it seems obviously true.
Considering that McNeil’s destruction of the waiver form is inextricably en *964 twined with his right by more appropriate means to end his consent to interrogation, and with his right ineffectually to wish he had not consented in the first place, we thus find It necessary to parse the evidence carefully. In order to punish McNeil for an act thus associated with his constitutional right not to bear witness against himself, proof beyond a reasonable doubt is required that McNeil harbored the proscribed intent. We find all the evidence consistent with a reasonable hypothesis of innocence, and so reverse McNeil’s conviction for tampering with evidence. See, e.g., Driggers v. State, 164 So.2d 200 (Fla.1964); A.Y.G. v. State, 414 So.2d 1158 (Fla. 3d DCA 1982); Green v. State, 408 So.2d 1086 (Fla. 4th DCA 1982).
AFFIRMED in part, REVERSED in part.
WENTWORTH and ZEHMER, JJ., concur.

 Officer Jones testified, “We have to advise them of their rights. And we advise them of their rights and they sign that form. That’s the proof that I have to show here in this courtroom that he was advised .... ”