[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13871
_____

D.C. Docket No. 3:09-cv-01208-TJC-MCR

ANNE MARIE GENNUSA,
JOEL STUDIVANT,

Plaintiffs – Appellees
Cross Appellants,

versus

BRIAN CANOVA, individually,
THOMAS MARMO, individually,

Defendants – Appellants
Cross Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(April 8, 2014)

Before JORDAN, COX, and DUBINA, Circuit Judges.

JORDAN, Circuit Judge:

While investigating an alleged misdemeanor violation of a domestic violence injunction, Detective Thomas Marmo and Sergeant Brian Canova monitored, intercepted, and listened to privileged conversations between their suspect, Joel Studivant, and his attorney, Anne Marie Gennusa, who were in an interview room at the St. Johns County Sheriff's Office. They did so without any notice to Mr. Studivant and Ms. Gennusa, and without a warrant. Det. Marmo also seized from Ms. Gennusa, on Sgt. Canova's order, a statement written by Mr. Studivant. This too was done without a warrant.

In a thorough and well-reasoned summary judgment order, *see Gennusa v. Shoar*, 879 F. Supp. 2d 1337 (M.D. Fla. 2012), the district court ruled that the surreptitious electronic eavesdropping violated the Fourth Amendment and the Federal Wiretap Act, 18 U.S.C. § 2510 et seq., and that the seizure of Mr. Studivant's written statement contravened the Fourth Amendment. The district court further concluded that Det. Marmo and Sgt. Canova were not protected by qualified immunity. Det. Marmo and Sgt. Canova appeal, asserting that they are entitled to qualified immunity on the Fourth Amendment claims.[1]

After review of the record, and with the benefit of oral argument, we affirm. First, it has long been clearly established that the warrantless interception of

---

[1] Det. Marmo and Sgt. Canova do not address the Federal Wiretap Act in their brief, even though a claim for intentional interception of an oral communication under the Act, 18 U.S.C. §§ 2510(2) & 2511(a)(1), requires a showing that the plaintiff had a subjective expectation of privacy "that society is willing to recognize as reasonable." *United States v. McKinnon*, 985 F.2d 525, 527-28 (11th Cir. 1983). We therefore do not address the claims under the Act.

private conversations – like the privileged ones here – offends the Fourth Amendment. Second, Det. Marmo and Sgt. Canova did not properly assert in the district court that the seizure of Mr. Studivant's statement was permitted by the exigent circumstances exception to the Fourth Amendment's general warrant requirement.

# I

We conduct plenary review of the district court's grant of summary judgment, viewing the facts in the light most favorable to the non-moving parties. Summary judgment is appropriate if there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014). As the district court noted, *see Gennusa*, 879 F. Supp. 2d at 1342-43, the relevant facts, which we set out below, are undisputed.

In the summer of 2009, Det. Marmo was investigating Mr. Studivant's possible misdemeanor violation of a domestic violence injunction. On June 8, 2009, in the course of that investigation, Det. Marmo conducted a non-custodial interview of Mr. Studivant at the St. Johns County Sheriff's Office. Ms. Gennusa was present during the interview as Mr. Studivant's attorney. The interview was conducted in an interview room at the Sheriff's Office that was 10 feet by 10 feet, contained a table, and had a small window on the door.

Unbeknownst to Mr. Studivant or Ms. Gennusa, all that took place in the interview room – including their privileged attorney-client conversations – was being recorded and actively monitored by members of the Sheriff's Office (including Det. Marmo and Sgt. Canova) through a concealed camera in the room. The camera was not obviously recognizable, no signs warned visitors of the possibility of electronic surveillance, and Mr. Studivant and Ms. Gennusa were not told that they were being recorded or monitored. *See id.* at 1342 n.1.

When the interview began, Mr. Studivant agreed to prepare a sworn written statement. As Mr. Studivant began writing his statement, Det. Marmo left the interview room and closed the door. While they were alone in the room, Mr. Studivant and Ms. Gennusa discussed matters related to the investigation.

Ms. Gennusa then left the interview room and met with Det. Marmo in his office. When she returned to the interview room, Ms. Gennusa closed the door and informed Mr. Studivant that Det. Marmo was going to arrest him. Following a discussion with Ms. Gennusa, Mr. Studivant decided he no longer wanted to give Det. Marmo a written statement.

Det. Marmo came back to the interview room and demanded Mr. Studivant's written statement. After a somewhat heated discussion, Mr. Studivant and Ms. Gennusa refused to turn over the statement. Det. Marmo left the room again and went to see his supervisor, Sgt. Canova. During their conversation, Det. Marmo

4

and Sgt. Canova actively monitored Mr. Studivant and Ms. Gennusa in the interview room, and saw Ms. Gennusa place the written statement on the table. Sgt. Canova instructed Det. Marmo to return to the interview room and retrieve the statement.

As he came back into the room, Det. Marmo forcibly grabbed the statement from underneath Ms. Gennusa's hand. He then arrested Mr. Studivant for violation of the domestic violence injunction, and later attached the written statement to his arrest report. Mr. Studivant ultimately entered into a deferred prosecution agreement, and the criminal charge against him was dismissed.

Mr. Studivant and Ms. Gennusa filed suit in federal district court against Det. Marmo and Sgt. Canova in their individual capacities. They asserted claims under 42 U.S.C. § 1983 for violations of the Fourth Amendment (based on the warrantless recording of their privileged conversations and the seizure of the written statement), and under 18 U.S.C. § 2520(a) for violations of the Federal Wiretap Act (based on the warrantless recording).[2]

## II

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly

---

[2] Mr. Studivant and Ms. Gennusa also sued St. Johns County Sheriff David Shoar, but the district court's rulings on the official capacity claims against Sheriff Shoar are not before us in this appeal.

established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 4-5 (2013) (internal citations and quotation marks omitted).

Because it is undisputed that Det. Marmo and Sgt. Canova were acting within the scope of their discretionary authority, Mr. Studivant and Ms. Gennusa bear the burden of establishing that qualified immunity is not appropriate. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). To satisfy this burden, they must show two things – first, that Det. Marmo and Sgt. Canova violated the Fourth Amendment, and second, that at the time of the incidents in question it was clearly established that the challenged conduct was unconstitutional. *See, e.g.*, *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009).

### III

We begin with the warrantless monitoring and recording of the attorney-client conversations of Mr. Studivant and Ms. Gennusa. The district court held that Det. Marmo and Sgt. Canova violated the Fourth Amendment because Mr. Studivant and Ms. Gennusa had a "subjective expectation[ ] that their conversations were private" and because this expectation, given the confidential attorney-client nature of the conversations, was "objectively reasonable." *See*

6

*Gennusa*, 879 F. Supp. 2d at 1346-49. The district court also denied qualified immunity to Det. Marmo and Sgt. Canova. Acknowledging that there was "no case precisely on point," the district court explained that since the late 1960s "it has been clearly established that the Fourth Amendment prohibits the police from electronically intercepting communications without a warrant when the speakers have a reasonable expectation of privacy." *See id.* at 1349-50.

On appeal, Det. Marmo and Sgt. Canova challenge the district court's qualified immunity ruling on two grounds. They argue that neither Mr. Studivant nor Ms. Gennusa had a reasonable expectation that their attorney-client conversations in the interview room would be private, and that, as a result, there was no constitutional violation. *See* Br. for Appellants at 15-16. They also contend that it was not obvious to a reasonable officer in June of 2009 that monitoring and recording those conversations without a warrant violated the Fourth Amendment. *See id.* at 16-18. As we explain, neither argument carries the day.

## A

The Fourth Amendment, as applied to the states by way of the Fourteenth Amendment, *see Mapp v. Ohio*, 367 U.S. 643, 646-47 (1961), protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. For our purposes, a

Fourth Amendment search occurs "when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001).

Almost 50 years ago, the Supreme Court held that a "'conversation [is] within the Fourth Amendment's protections," and that "the use of electronic devices to capture it [is] a 'search' within the meaning of the Amendment." *See Berger v. New York*, 388 U.S. 41, 51 (1967) (invalidating a New York statute that authorized the electronic interception of private conversations by the police (through recording devices installed in various offices) pursuant to a court order, on the ground that the procedures for obtaining the order were insufficient to comply with the Warrants Clause of the Fourth Amendment). In a number of cases following *Berger,* the Supreme Court similarly ruled that the warrantless electronic interception of private conversations by the government violates the Fourth Amendment. *See Katz v. United States*, 389 U.S. 347, 353-59 (1967) (warrantless interception of conversation conducted from public phone booth in case involving use of wires to make bets or wagers); *United States v. U.S. Dist. Court for the E. Dist. of Mich.*, 407 U.S. 297, 318-21 (1972) (warrantless interception of calls in case involving domestic threat to national security – a plot to bomb the office of the Central Intelligence Agency); *Mitchell v. Forsyth*, 472 U.S. 511, 531-34 (1985) (warrantless wiretap of anti-war group which had made plans to blow up heating

8

tunnels connecting office buildings in Washington, D.C.). *Mitchell*, while granting qualified immunity to the Attorney General because the warrantless wiretapping at issue there had been authorized prior to *Katz*, explained that *Katz* "held that no recognized exception to [the Fourth Amendment's] warrant requirement could justify warrantless wiretapping in an ordinary criminal case." *Mitchell*, 472 U.S. at 531. These cases stand for the now-unremarkable proposition that, because society recognizes as reasonable an expectation of privacy for confidential conversations between individuals, the government needs a warrant to intercept or record such conversations.[3]

The only question, then, is whether the subjective expectation of privacy held by Mr. Studivant and Ms. Gennusa about their privileged attorney-client conversations is one that society recognizes as reasonable, and we easily conclude that it is. An expectation of privacy is deemed reasonable, the Supreme Court has said, if it "has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978). *See also Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (same). Mr. Studivant and Ms. Gennusa have pointed to such a source: the attorney-client privilege, which is the

---

[3] A warrant is not needed if one of the parties to the conversation consents to the interception or recording. *See, e.g.*, *United States v. Caceres*, 440 U.S. 741, 744 (1979). Here, however, there was no consent.

"oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted). *See Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) (explaining that the attorney-client privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure"). Given that the intercepted conversations had to do with the ongoing criminal investigation of Mr. Studivant by Det. Marmo, they fell squarely within the attorney-client privilege. *See Upjohn Co.*, 449 U.S. at 389. *Cf. United States v. Ofhse,* 817 F. 2d 1508, 1511, 1516 n.6 (11th Cir. 1987) (characterizing as "reprehensible" the government's use of a defense attorney as an informant against his indicted client, and the placement of a body bug on the attorney "to conduct . . . electronic surveillance of the conversations" between he and his client).

The Supreme Court has also held that whether an expectation of privacy is "'legitimate' or 'reasonable' necessarily entails a balancing of interests." *See Hudson v. Palmer*, 468 U.S. 517, 527 (1984) (holding that an inmate has no reasonable expectation of privacy in his prison cell). Under this formulation, we come to the same conclusion. Here the competing interests are the interest of society in monitoring attorney-client conversations in a non-custodial setting at a

sheriff's office and the interest of the attorney and client in keeping their privileged conversations in such a setting private. Given these interests, we readily strike the balance in favor of privacy. The government has no weighty law-enforcement, security, or penological interest in recording, without a warrant, the attorney-client conversations of a person who has not been arrested, even if those conversations take place in an interview room at a sheriff's office. On the other hand, the need for privacy is very strong when a person who is not under arrest or otherwise in custody is speaking to his attorney on privileged matters, even within the confines of an interview room at a sheriff's office. "One threat to effective assistance of counsel posed by government interception of attorney-client communications lies in the inhibition of free exchanges between defendant and counsel because of the fear of being overheard." *Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977). So, even if the *Hudson* balancing test applies, Mr. Studivant and Ms. Gennusa had an objectively reasonable expectation of privacy when they discussed privileged matters in the interview room.

In an effort to demonstrate that Mr. Studivant and Ms. Gennusa did not have an objectively reasonable expectation of privacy, Det. Marmo and Sgt. Canova point to a number of cases involving the recording of certain conversations at police stations. These cases, however, are distinguishable because they involved individuals who had been arrested, were in police custody, and/or had some

11

indication that they were being monitored. *See United States v. Delibro*, No. 09-11995, 2009 WL 3059064, 347 Fed. App'x 474, 475 (11th Cir. Sept. 25, 2009) (arrestee and his mother did not have a reasonable expectation of privacy in an actively-monitored police interview room, as arrestee was "well aware" that police could be monitoring his conversations, and as a result there was no basis to suppress conversations between them that the police had recorded without a warrant); *Johnson v. State*, 730 So. 2d 368, 370 (Fla. Dist. Ct. App. 1999) (police did not violate the Fourth Amendment by recording, without a warrant, conversations between a husband, who had been arrested, and his wife in an interview room at a police station because no reasonable expectation of privacy existed and wife admitted that she did not know if they were being surveilled or recorded); *Deegan v. Rudman*, Civil Action No. 3:10-cv-00016, 2011 WL 251226, at *3-*4 (W.D. Va. Jan. 26, 2011) (arrestee did not have a reasonable expectation of privacy in an interrogation room at a police station, where video and audio monitoring was "routine," and therefore police did not violate the Fourth Amendment by recording his side of a conversation with his attorney on an officer's cell phone).

The status of the persons being recorded matters because, as the Supreme Court has said on various occasions, "the expectations of privacy of an individual taken into police custody 'necessarily [are] of a diminished scope.'" *Maryland v.*

12

*King*, 133 S. Ct. 1958, 1978 (2013) (citation omitted). Unlike the individuals in *Delibro*, *Johnson*, and *Deegan*, Mr. Studivant was not under arrest at the time of his privileged conversations with Ms. Gennusa, and his interview with Det. Marmo was non-custodial. And, unlike certain of the individuals in those cases, who had some indication that they were being surveilled and monitored, Mr. Studivant and Ms. Gennusa had no idea that Det. Marmo, Sgt. Canova, and other members of the St. Johns Sheriff's Office were eavesdropping on them. Indeed, as the district court put it, they were "given no indication of this fact." *See Gennusa*, 879 F. Supp. 2d at 1341 & n.1. *Cf. United States v. Duncan*, 598 F.2d 839, 852 (4th Cir. 1979) (holding, in criminal prosecution under the Federal Wiretap Act, that IRS agents conducting an audit at a bank had a reasonable expectation of privacy in an office assigned to them by the bank, and distinguishing cases holding that "statements made by a prisoner in police custody may not be considered justifiably private": "The significant fact in the cases involving statements uttered while in police custody is not the hostility between officer and suspect; it is the fact that the speaker was in police custody. Those cases simply announce a societal decision that one may not reasonably expect his utterances to be private while he is held in police custody for violation of the law.").[4]

---

[4] A number of published cases rejecting the Fourth Amendment claims of inmates or detainees whose prison/jail calls were recorded are based on the rationale that the institution in question provided sufficient notice or warning that all calls would be recorded and that, as a

13

In sum, Mr. Studivant and Ms. Gennusa had a reasonable expectation of privacy for their privileged attorney-client conversations in the interview room of the St. Johns County Sheriff's Office. The surreptitious recording and monitoring of those attorney-client conversations, without notice to Mr. Studivant or Ms. Gennusa, and without a warrant, violated the Fourth Amendment.[5]

**B**

We next address whether, in June of 2009, it was clearly established that the Fourth Amendment prohibited the warrantless recording of attorney-client conversations between a non-incarcerated suspect and his attorney under the circumstances presented here. Like the district court, *see Gennusa*, 879 F. Supp. 2d at 1349-50, we answer that question in the affirmative.

---

result, the inmates or detainees were deemed to have consented to the recordings. *See, e.g.*, *United States v. Novak*, 531 F.3d 99, 101-03 (1st Cir. 2008); *United States v. Lucas*, 499 F.3d 769, 780 (8th Cir. 2007) (en banc); *United States v. Friedman*, 300 F.3d 111, 123 (2d Cir. 2002); *Jackson v. State*, 18 So. 3d 1016, 1030 (Fla. 2009). This rationale does not apply here, as Mr. Studivant and Ms. Gennusa were not given any notice or indication that their privileged conversations would be monitored and recorded. *Cf. United States v. Noriega*, 917 F.2d 1543, 1551 (11th Cir. 1990) ("[If] Noriega did sign a valid release evidencing his understanding that *all* of his telephone conversations, including those with members of his defense team, would be recorded[,]. . . it is conceivable that the District Court could find that Noriega's attorney-client privilege would not prohibit the government's recording of Noriega's telephone conversations with his defense attorneys because he had no reasonable expectation of privacy.").

[5] *Cf. Lanza v. New York*, 370 U.S. 139, 143-44 (1962) (plurality opinion) (noting in dicta that "it may be assumed that even in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection"); *United States v. Harrelson*, 754 F.2d 1153, 1169-70 (5th Cir. 1985) (holding that arrestee and his wife did not have a reasonable expectation of privacy as to their conversations at a county jail, but nonetheless noting in dicta: "Nor would our observations here translate directly to attorney-client visitations, where the parties have a right to assured confidentiality and are, in the normal case, entitled to assume – and if necessary to demand – it.").

We do not always "require a case directly on point before concluding that the law is clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton*, 134 S. Ct. at 5. In other words, a "constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). *See also Coffin v. Brandau*, 642 F.3d 999, 1014-15 (11th Cir. 2011) (en banc) ("To find that a broad principle of law clearly establishes the law as to a specific set of facts, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.") (internal quotation marks and citation omitted). In the end, the "touchstone is whether the right would be apparent to a reasonable officer." *Gilmore v. Hodges*, 738 F.3d 266, 277 (11th Cir. 2013).

It has long been clear that the electronic interception of oral conversations constitutes a search under the Fourth Amendment. *See Berger*, 388 U.S. at 51. It has also long been clear that in ordinary criminal cases the warrantless interception of private phone calls violates the Fourth Amendment because it infringes the reasonable expectation of privacy of the conversants. *See Katz*, 389 U.S. at 353-59. And, finally, it has long been clear that even in sensitive cases involving

15

domestic threats to national security law enforcement officials need a warrant before electronically intercepting private communications. *See U.S. Dist. Court*, 407 U.S. at 318-21; *Mitchell*, 472 U.S. at 531-34. The cases establishing these principles – *Berger*, *Katz*, *U.S. District Court*, and *Mitchell* – and their reasoning, *see Hope*, 536 U.S. at 743, made it obvious and apparent to any reasonable law enforcement official in June of 2009 that the Fourth Amendment requires that a warrant be secured before non-custodial privileged communications between attorneys and their clients – communications which are normally entitled to be kept confidential as a matter of law – can be electronically monitored, intercepted, or recorded.

That the attorney-client conversations here took place inside an interview room at a sheriff's office does not mean that Det. Marmo and Sgt. Canova lacked clear notice that their warrantless electronic surveillance was illegal. As the Supreme Court has explained, "[o]fficials can still be on notice that their conduct violates established law even in novel factual circumstances," as long as the "state of the law [at the relevant time] gave [them] fair notice that their [actions] w[ere] unconstitutional," *Hope*, 536 U.S. at 741, and that is the case here. Although locale can matter, *see, e.g.*, *McKinnon*, 985 F.2d at 527-28 (holding that a suspect does not have a reasonable expectation of privacy in the back seat of a police car), it is not dispositive. We held more than 20 years ago that the "location of the

16

conversations that [are] intercepted is not determinative; the proper inquiry is whether the government's activities in electronically listening to and recording the conversations violated privacy upon which [the participants] justifiably relied." *United States v. Shields*, 675 F.2d 1152, 1158 (11th Cir. 1982). Here Mr. Studivant had not been arrested, and his liberty had not been curtailed in any way. His status therefore did not result in a diminished expectation of privacy.

Stated differently, the "fact that the [monitoring and recording] took place in the context of [an interview room at a sheriff's office] does not materially distinguish this case from [Supreme Court] precedent [on electronic surveillance of private conversations]." *Skrtich v. Thornton*, 280 F.3d 1295, 1304 (11th Cir. 2002) (excessive force claim in prison setting). *See also O'Rourke v. Hayes*, 378 F.3d 1201, 1208 (11th Cir. 2004) (warrantless search of home: "[E]ven if a factually similar case did not exist, [the warrantless search] would still have violated rights that are clearly established under . . . general statements of principle."). The district court therefore correctly held that Det. Marmo and Sgt. Canova were not entitled to qualified immunity for their warrantless monitoring and recording of the privileged attorney-client conversations between Mr. Studivant and Ms. Gennusa.

## IV

We now turn to the Fourth Amendment seizure claim. Det. Marmo and Sgt. Canova argue that the warrantless seizure of Mr. Studivant's written statement was

17

constitutional because there were exigent circumstances, i.e., the threat of destruction of evidence. *See* Br. for Appellants at 20-22. They also maintain that Ms. Gennusa was not seized (because Detecive Marmo never touched her), and that, in any event, they are protected by qualified immunity. *See id.* at 22-24.

In relevant part, the Fourth Amendment protects the "right of the people to be secure in their "papers[ ] and effects[ ] against unreasonable searches and seizures." U.S. Const. amend. IV. After Ms. Gennusa refused to give Mr. Studivant's written statement to him, Det. Marmo returned to the interview room and forcibly took the statement from underneath Ms. Gennusa's hand. This constituted a seizure of the statement for purposes of the Fourth Amendment, as Det. Marmo "meaningful[ly] interfere[d] with [the] possessory interests [of Mr. Studivant and Ms. Gennusa] in [an item] of property." *Sodal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992) (citation and internal quotation marks omitted). It matters not, therefore, that Ms. Gennusa herself was not physically touched or restrained.

"[I]n 'the ordinary case,' seizures of personal property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless . . . accomplished pursuant to a judicial warrant,' issued by a neutral magistrate after finding probable cause." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). There are, of course, certain limited exceptions to the Fourth Amendment's warrant requirement. One of those

is exigent circumstances, which can exist when there is a "need to prevent the imminent destruction of evidence." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). To determine whether a police officer "faced an emergency that justified acting without a warrant," a court "looks to the totality of circumstances." *Missouri v. McNeely*, 133 S. Ct. 1552, 1559 (2013).

Det. Marmo and Sgt. Canova, as the government actors responsible for the warrantless seizure, "ha[d] the burden of proof of showing exigent circumstances." *United States v. Tovar-Rico*, 61 F.3d 1529, 1535 (11th Cir. 1995). According to the district court, however, Det. Marmo and Sgt. Canova "d[id] not argue that any exceptions to the warrant requirement appl[ied]," and it therefore found that they had "conceded that [Det.] Marmo seized [Mr.] Studivant's property without any exception to the warrant requirement." *Gennusa*, 879 F. Supp. 2d at 1344-45. Det. Marmo and Sgt. Studivant contest this determination, asserting that they raised exigent circumstances as a justification for the seizure of the statement, *see* Br. for Appellants at 20-22, but our review of the record indicates that the district court was correct. To explain why the district court got it right, we detail the relevant filings in the case.

In their second amended complaint, Mr. Studivant and Ms. Gennusa alleged in Counts II and III that the warrantless seizure of the statement violated their Fourth Amendment rights. *See* D.E. 41 at ¶¶ 40-41, 64-66, 70-73. They also

alleged that, in grabbing the statement, Det. Marmo used excessive force in violation of the Fourth Amendment and broke Ms. Gennusa's fingernail. *See id.* at ¶ 67. So, as pled, Counts II and III contained an unreasonable seizure claim (based on the seizure of the statement) and an excessive force claim (based on the broken fingernail).

In their renewed motion for summary judgment, Det. Marmo and Sgt. Canova explicitly recognized that the second amended complaint pled a distinct Fourth Amendment unreasonable seizure claim based upon the taking of the statement without a warrant. *See* D.E. 44 at 6, 11.[6] When they addressed that claim on the merits, they argued that the "single instantaneous grab of a piece of paper [wa]s of no constitutional dimension" because no force (or justified minimal force) had been used and because any physical contact with Ms. Gennusa was incidental and accidental. *See id.* at 12-13. They also argued, in a single sentence, that Det. Marmo "sought to prevent the arguable destruction of or tampering with evidence" in violation of Florida law. *See id.* at 13 (citing Florida cases). Finally, they argued that they were entitled to qualified immunity because there was no binding precedent (from the Supreme Court, the Eleventh Circuit, or the Florida Supreme Court) prohibiting a police officer from "grab[bing] evidence plainly

---

[6]    Their understanding was not surprising, for at a hearing before the filing of the second amended complaint, the district court told the parties that, as it interpreted the first amended complaint, Mr. Studivant and Ms. Gennusa were alleging that the taking of the statement without a warrant was *per se* unreasonable under the Fourth Amendment. *See* D.E. 39 at 8-9.

20

visible but which is covered in part by the hand of a criminal defense lawyer who seems determined to decide unilaterally through self-help what information law enforcement officers can and cannot obtain." *See id.* at 14.

When they responded to this summary judgment motion, and themselves moved for summary judgment, Mr. Studivant and Ms. Gennusa argued that the seizure of the statement without a warrant constituted a seizure that was *per se* unreasonable under the Fourth Amendment. They also asserted that "none of the exceptions to the warrant requirement [were] present." *See* D.E. 52 at 10. Det. Marmo and Sgt. Canova did not file a response/reply memorandum or otherwise respond to the *per se* violation argument.

"[I]f . . . part[ies] hope[ ] to preserve a claim, argument, theory, or defense on appeal, [they] must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it." *In re Pan Am. World Airways, Inc.*, 905 F.2d 1457, 1462 (11th Cir. 1990). *See also Bogle v. McClure*, 332 F.3d 1347, 1355 n.5 (11th Cir. 2003) (concluding that officials waived a certain qualified immunity argument as a result of a stipulation they entered into). The single, passing reference to the prevention of the "arguable destruction of or tampering with evidence" by Det. Marmo and Sgt. Canova in their renewed summary judgment motion – unaccompanied by any discussion or elaboration – was insufficient to preserve an exigent circumstances argument.

21

First, the reference was devoid of any factual support. Nowhere in their statement of facts or memorandum of law did Det. Marmo and Sgt. Canova present any evidentiary support for the purported reason Det. Marmo seized the statement. Nor did they cite to any evidence suggesting that they reasonably believed that there was an emergency because Ms. Gennusa – an officer of the court – was going to destroy the statement or tamper with it before they could secure a warrant. Second, there was no mention, and certainly no discussion, of the exigent circumstances standard under the Fourth Amendment. Third, there was no citation to any federal authorities. Fourth, the two Florida cases cited in the motion did not deal with exigent circumstances. *See McNeil v. State*, 438 So. 2d 960, 961-63 (Fla. Dist. Ct. App. 1983) (sufficiency of the evidence challenge to conviction for tampering with evidence); *Smigiel v. State*, 439 So. 2d 239, 242-43 (Fla. Dist. Ct. App. 1983) (challenge, in case involving tampering with evidence, to affidavit submitted in support of application for search warrant).

Simply put, the district court was not required to address an exigent circumstances argument that Det. Marmo and Sgt. Canova failed to properly articulate. It was not obliged "to distill [a] potential argument that could [have] be[en] made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). We note, as well, that the answer of Det. Marmo and Sgt. Canova to the second

22

amended complaint did not put the district court on notice that they were relying on exigent circumstances, for that pleading did not mention exigent circumstances when it listed qualified immunity as an affirmative defense. *See* D.E. 43 at 7.

In any event, assuming that the single, passing reference to Det. Marmo seeking to "prevent the arguable destruction of or tampering with evidence" was sufficient to present and preserve an exigent circumstances argument, the qualified immunity argument defense fails on the merits. As noted, Det. Marmo and Sgt. Canova did not point to or present any evidence to justify an objectively reasonable belief that they were facing an emergency justifying a warrantless seizure, and "[m]ere speculation [about exigent circumstances], without factual support, is not enough to overcome the warrant requirement." *United States v. Santa*, 236 F.3d 662, 671 (11th Cir. 2000). There was no explanation, for example, about why Det. Marmo could not have told Ms. Gennusa to preserve the statement because he was going to seek a warrant for it. And, because the warrantless seizure of personal property is unreasonable under the Fourth Amendment unless one of the exceptions to the warrant requirement applies, *see McArthur*, 531 U.S. at 330, qualified immunity does not apply. "[Det. Marmo and Sgt. Canova] did not have a search warrant, and can point to no exigency justifying [the seizure]. Consequently, even if a factually similar case did not exist, [their] actions would

23

still have violated rights that are clearly established under these general statements of principle." *O'Rourke*, 378 F.3d at 1208.

## V

"The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding." *Olmstead v. United States*, 277 U.S. 438, 479 (1928) (Brandeis, J., dissenting). The monitoring and recording of the privileged attorney-client conversations between Mr. Studivant and Ms. Gennusa, without notice and without a warrant, violated their clearly established Fourth Amendment rights. So too, on this record, did the warrantless seizure of Mr. Studivant's written statement from Ms. Gennusa. The district court's grant of summary judgment in favor of Mr. Studivant and Ms. Gennusa is affirmed, and the case is remanded for further proceedings.

**AFFIRMED.**