[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11462
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cv-01045-ACC-GJK

ADRIA HILL,

Plaintiff-Appellant,

versus

ORANGE COUNTY SHERIFF, Jerry L. Demings,
JOSEPH M. COVELLI,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 19, 2016)

Before MARTIN, JORDAN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Adria Hill brought this § 1983 action for damages in Florida state court against Orange County Sheriff Jerry L. Demings and Corporal Joseph M. Covelli. She alleged that her constitutional rights were violated when law enforcement officers entered her home without a warrant. The suit was later removed to federal court. The district court granted the defendants summary judgment, finding that Corporal Covelli was entitled to qualified immunity and that Sheriff Demings was not subject to supervisory liability. After careful review, we affirm.

I.

Around 10:30 AM on June 16, 2011, a man entered an Underground Station clothing store at a mall and asked an employee to get some shoes from the back of the store for him. When the employee went to the stock room to get the shoes, the man followed her there, pointed a gun at her, and struck her twice in the face before pushing her to the ground. While holding the employee at gunpoint, the man took $300 from the cash register. Then, the man tied the employee's hands and legs, covered her mouth with tape, and locked her in the bathroom before leaving the store with the money and a pair of shoes.

Video surveillance footage from the Sears store in the same mall depicted a man entering Sears at 10:17 AM and leaving at 10:45 AM. When he left, the man ran toward a bus stop located on an access road. He was carrying what looked like Underground Station bags. The Orange County Sheriff's Office ("Sheriff's

Office") used this footage to release photographs of the man for identification purposes. On June 21, the Sheriff's Office received several tips identifying the man as Collie P. White. That same day, the Underground Station employee selected White's photograph out of a lineup, identifying him as the perpetrator of the crime. The Sheriff's Office secured an arrest warrant for White on charges of robbery with a firearm (a first-degree felony), kidnapping with intent to inflict bodily harm or terrorize with a firearm (a life felony), aggravated assault with a firearm, and battery. The Sheriff's Office's Tactical Surveillance and Apprehension Team (the "Team"), led by Sergeant Ricky Stelter, commenced an investigation to locate and apprehend White.

The very next day, June 22, 2011, the Sheriff's Office received a court order authorizing surveillance of White's cellular phone. This surveillance allowed the Sheriff's Office to get geolocation data for White's phone from his cellular phone carrier. By sending signals that communicate with White's phone through the carrier's phone towers—a process called "pinging"—the carrier could generate estimates of the phone's location within error rates measured in meters.

That same day, the Team received notification that White's phone had pinged from a street named Woodman Way in Orlando, Florida. Based on this information, the Team set up covert visual surveillance on Woodman Way and the surrounding area. Team officers communicated with each other from their covert

3

locations via radio.  While the Team surveilled the area, one officer announced over the radio that he had spotted White near a multi-family residence located at 1160 Woodman Way, and that White looked back at him through binoculars. Another Team officer drove his unmarked vehicle onto Woodman Way to confirm the identification, and promptly announced over the radio that he had seen White look in his direction before turning and rushing into 1160 Woodman Way.

Corporal Covelli, another officer on the Team, heard both of these announcements over the radio.  He then heard Sergeant Stelter instruct the Team to enter the residence and apprehend White.  Along with other officers, Corporal Covelli approached the residence.  Adria Hill, an African-American tenant of one of the units in the building, had just locked her front door when she saw the officers approach at around 7:00 PM.  The officers then used some sort of device to "bust in the door" and began their search.  Hill asked one of the officers to produce a search warrant, but the officer told her they did not need one.  The Team did not find White in Hill's home and believed that White escaped out the back door.  Hill says that White was never in her home at any time that day.  After searching Hill's home, the Team entered the homes of all but one of Hill's neighbors—each of whom was African-American—to search for White, but to no avail.

4

II.

The district court granted summary judgment in favor of the defendants.  We review de novo the district court's grant of summary judgment, considering the evidence and all reasonable inferences from it in the light most favorable to the nonmoving party.  Rioux v. City of Atlanta, 520 F.3d 1269, 1274 (11th Cir. 2008).  Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986).

A.

With respect to Hill's Fourth Amendment claim, the district court held that Corporal Covelli was entitled to qualified immunity because his warrantless entry and search of Hill's home did not amount to a constitutional violation, and alternatively, because any violated right was not clearly established at the time of the violation.  Hill does not dispute that Corporal Covelli was acting within the scope of his discretionary authority, as he entered Hill's home in order to apprehend a suspect for violent offenses.  Thus, Hill bears the burden of showing that qualified immunity is not appropriate.  See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  We conduct a two-step inquiry to decide whether qualified immunity should be granted: (1) "taken in the light most favorable to the party

asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right;" and (2) "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, [we] must then determine whether the right was clearly established." Id. (quotation omitted) (alteration adopted).

When determining whether a constitutional right was "clearly established," our inquiry is limited to the law at the time of the incident, as "an official could not reasonably be expected to anticipate subsequent legal developments." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Further, "[i]n this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997) (en banc). A plaintiff can show that a constitutional right was clearly established in three different ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted).

6

Because we must operate under the plaintiff's version of the facts and construe all ambiguous evidence in her favor, we assume that White was never in Hill's home on the day of the incident. See Lee, 284 F.3d at 1194. However, even under this assumption, we agree with the district court that Hill has not met her burden of demonstrating that Corporal Covelli violated a clearly established Fourth Amendment right.

The Fourth Amendment establishes a right against non-consensual warrantless entry into one's home unless probable cause and exigent circumstances exist. United States v. Ramos, 933 F.2d 968, 972 (11th Cir. 1991). The Team had secured an arrest warrant for White based on identification tips and the victim's photo-lineup identification, which constitutes probable cause to arrest him. See Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016); see also United States v. Watson, 423 U.S. 411, 423, 96 S. Ct. 820, 827 (1976). But, Corporal Covelli entered Hill's home without a warrant. Thus, Hill's Fourth Amendment right against Corporal Covelli's warrantless entry of her home was clearly established only if there was, at the time, clear binding precedent establishing no exigent circumstances existed when the Team entered Hill's home.

Exigent circumstances may arise from a variety of situations, including when there is "hot pursuit of a fleeing felon, or imminent destruction of evidence, or the need to prevent a suspect's escape, or the risk of danger to the police or to

other persons inside or outside the dwelling." Minnesota v. Olson, 495 U.S. 91, 100, 110 S. Ct. 1684, 1690 (1990) (quotation and citation omitted). Because the man who committed the crime here had escaped and gone several days without being apprehended by the police, this case does not involve hot pursuit. See Stanton v. Sims, 571 U.S. ___, 134 S. Ct. 3, 6 (2013) (per curiam) (explaining that the hot pursuit doctrine does not apply where there is "no immediate or continuous pursuit of [the suspect] from the scene of a crime" (quotation omitted)). But in any event, we determine whether exigent circumstances existed by looking at the totality of the circumstances. Gennusa v. Canova, 748 F.3d 1103, 1115 (11th Cir. 2014) (citing Missouri v. McNeely, 569 U.S. ___, 133 S. Ct. 1552, 1559 (2013)). Some of the factors we consider include the gravity of the offense with which the suspect was charged; whether there was reason to believe that the suspect was in the premises the officers entered and was armed; and whether delay could have allowed the suspect to escape or jeopardize the safety of the officers or the public. See Ramos, 933 F.2d at 972. Exigent circumstances are evaluated on an objective basis. United States v. Young, 909 F.2d 442, 446 (11th Cir. 1990).

Looking at the totality of the circumstances, we cannot say that exigent circumstances clearly did not exist here. White was charged with serious felonies that were violent in nature, including armed robbery and kidnapping with intent to inflict harm or terrorize with a firearm. Corporal Covelli had good reason to

8

believe that White was inside Hill's home.  While investigating the case, the Team used cellular phone surveillance technology to track White's cell phone to Woodman Way.  Then, after setting up covert surveillance of that area, Corporal Covelli heard two different fellow officers announce over the radio that they had spotted White in the vicinity of 1160 Woodman Way and that White had rushed into that building.  Even assuming, as we must, that the officers were mistaken in some way, a reasonable officer in Corporal Covelli's position would have strong reason to believe that White was inside Hill's home.  Because White was suspected of violent offenses involving the use of a firearm, it was reasonable to believe that White continued to be armed and dangerous.  Finally, Corporal Covelli had reason to believe that any delay on his part could allow White to escape or cause harm to others.  Specifically, the fact that the offenses for which White was a suspect involved the use of a firearm raised a reasonable concern that White might use a firearm in his escape.  See Warden v. Hayden, 387 U.S. 294, 298–99, 87 S. Ct. 1642, 1645–46 (1997) (noting that exigent circumstances existed because the suspect had committed an armed robbery and any delay in investigation "would gravely endanger [the officers'] lives or the lives of others").  We therefore affirm the district court's ruling that Corporal Covelli was entitled to qualified immunity with respect to Hill's Fourth Amendment claim.

9

B.

The district court also rejected Hill's Fifth and Fourteenth Amendment claims by noting that the Fifth Amendment does not apply to state actors and finding that Hill has not provided enough factual allegations to support a Fourteenth Amendment equal protection claim.  On appeal, Hill argues that the district court erred by granting summary judgment for Corporal Covelli because Corporal Covelli and the other officers would not have entered the homes of Caucasian citizens without a warrant.

We affirm the district court's finding that Hill has not provided sufficient factual support to survive summary judgment on her equal protection claim.  In order to prevail on a racial discrimination claim, a plaintiff must prove, among other things, that the state's actions were racially motivated.  See City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 194, 123 S. Ct. 1389, 1394 (2003) ("We have made clear that proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." (quotation omitted) (alteration adopted)).  Thus, to get past summary judgment on an equal protection claim, a plaintiff must produce enough evidence to allow a reasonable trier of fact to find racially discriminatory intent.  See Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1496 (11th Cir. 1996) (defining a "genuine"

issue of fact within the meaning of the summary judgment standard in Federal Rule of Civil Procedure 56(c)).

Hill supports her argument by pointing out that she and her neighbors are African American.  However, that fact alone does not raise a genuine issue as to whether Corporal Covelli acted with discriminatory intent when he entered Hill's home under Sergeant Stelter's directions to apprehend a crime suspect.  On this record, we also affirm the district court's grant of summary judgment in favor of Corporal Covelli on Hill's Fourteenth Amendment claim.

C.

Finally, the district court granted summary judgment for Sheriff Demings, the Orange County Sheriff, on Hill's supervisory liability claim because Corporal Covelli had not violated any of Hill's constitutional rights.  On appeal, Hill argues that Sheriff Demings's failure to train his deputies caused them to violate her constitutional rights.

Officers facing supervisory liability claims are entitled to qualified immunity unless the plaintiff states a violation of a clearly established constitutional right.  See Harper v. Lawrence Cty., 592 F.3d 1227, 1236–37 (11th Cir. 2010).  Because Hill has not met her burden of demonstrating that any members of the Sheriff's Office violated a clearly established constitutional right,

11

Sheriff Demings is entitled to qualified immunity.  We therefore affirm the district court's grant of summary judgment for Sheriff Demings.

**AFFIRMED.**