# SUPREME COURT OF THE UNITED STATES

## MIKE STANTON, PETITIONER *v.* DRENDOLYN SIMS

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 12–1217.   Decided November 4, 2013

PER CURIAM.

Around one o'clock in the morning on May 27, 2008, Officer Mike Stanton and his partner responded to a call about an "unknown disturbance" involving a person with a baseball bat in La Mesa, California.  App. to Pet. for Cert. 6.  Stanton was familiar with the neighborhood, known for "violence associated with the area gangs." *Ibid.*  The officers—wearing uniforms and driving a marked police vehicle—approached the place where the disturbance had been reported and noticed three men walking in the street. Upon seeing the police car, two of the men turned into a nearby apartment complex.  The third, Nicholas Patrick, crossed the street about 25 yards in front of Stanton's car and ran or quickly walked toward a residence.  *Id.,* at 7, 17.  Nothing in the record shows that Stanton knew at the time whether that residence belonged to Patrick or someone else; in fact, it belonged to Drendolyn Sims.

Stanton did not see Patrick with a baseball bat, but he considered Patrick's behavior suspicious and decided to detain him in order to investigate.  *Ibid.*; see *Terry* v. *Ohio,* 392 U. S. 1 (1968).  Stanton exited his patrol car, called out "police," and ordered Patrick to stop in a voice loud enough for all in the area to hear.  App. to Pet. for Cert. 7.  But Patrick did not stop.  Instead, he "looked directly at Stanton, ignored his lawful orders[,] and quickly went through [the] front gate" of a fence enclosing Sims' front yard.  *Id.,* at 17 (alterations omitted). When the gate closed behind Patrick, the fence—which was more than six feet tall and made of wood—blocked Stanton's view of the

yard. Stanton believed that Patrick had committed a jailable misdemeanor under California Penal Code §148 by disobeying his order to stop;* Stanton also "fear[ed] for [his] safety." App. to Pet. for Cert. 7. He accordingly made the "split-second decision" to kick open the gate in pursuit of Patrick. *Ibid.* Unfortunately, and unbeknownst to Stanton, Sims herself was standing behind the gate when it flew open. The swinging gate struck Sims, cutting her forehead and injuring her shoulder.

Sims filed suit against Stanton in Federal District Court under Rev. Stat. §1979, 42 U. S. C. §1983, alleging that Stanton unreasonably searched her home without a warrant in violation of the Fourth Amendment. The District Court granted summary judgment to Stanton, finding that: (1) Stanton's entry was justified by the potentially dangerous situation, by the need to pursue Patrick as he fled, and by Sims' lesser expectation of privacy in the curtilage of her home; and (2) even if a constitutional violation had occurred, Stanton was entitled to qualified immunity because no clearly established law put him on notice that his conduct was unconstitutional.

Sims appealed, and a panel of the Court of Appeals for the Ninth Circuit reversed. 706 F. 3d 954 (2013). The court held that Stanton's warrantless entry into Sims' yard was unconstitutional because Sims was entitled to the same expectation of privacy in her curtilage as in her home itself, because there was no immediate danger, and because Patrick had committed only the minor offense of disobeying a police officer. *Id.,* at 959–963. The court also found the law to be clearly established that Stanton's

———————
*"Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment." Cal. Penal Code Ann. §148(a)(1) (2013 West Cum. Supp.).

pursuit of Patrick did not justify his warrantless entry, given that Patrick was suspected of only a misdemeanor. *Id.,* at 963–964. The court accordingly held that Stanton was not entitled to qualified immunity. *Id.,* at 964–965. We address only the latter holding here, and now reverse.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson* v. *Callahan*, 555 U. S. 223, 231 (2009) (quoting *Harlow* v. *Fitzgerald*, 457 U. S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft* v. *al-Kidd*, 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 12) (quoting *Malley* v. *Briggs*, 475 U. S. 335, 341 (1986)). "We do not require a case directly on point" before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U. S., at \_\_\_ (slip op., at 9).

There is no suggestion in this case that Officer Stanton knowingly violated the Constitution; the question is whether, in light of precedent existing at the time, he was "plainly incompetent" in entering Sims' yard to pursue the fleeing Patrick. *Id.,* at \_\_\_ (slip op., at 12). The Ninth Circuit concluded that he was. It did so despite the fact that federal and state courts nationwide are sharply divided on the question whether an officer with probable cause to arrest a suspect for a misdemeanor may enter a home without a warrant while in hot pursuit of that suspect. Compare, *e.g., Middletown* v. *Flinchum*, 95 Ohio St. 3d 43, 45, 765 N. E. 2d 330, 332 (2002) ("We . . . hold today that when officers, having identified themselves, are in hot pursuit of a suspect who flees to a house in order to avoid arrest, the police may enter without a warrant,

regardless of whether the offense for which the suspect is being arrested is a misdemeanor"), and *State* v. *Ricci*, 144 N. H. 241, 244, 739 A. 2d 404, 407 (1999) ("the facts of this case demonstrate that the police had probable cause to arrest the defendant for the misdemeanor offense of disobeying a police officer" where the defendant had fled into his home with police officers in hot pursuit), with *Mascorro* v. *Billings*, 656 F. 3d 1198, 1207 (CA10 2011) ("The warrantless entry based on hot pursuit was not justified" where "[t]he intended arrest was for a traffic misdemeanor committed by a minor, with whom the officer was well acquainted, who had fled into his family home from which there was only one exit" (footnote omitted)), and *Butler* v. *State*, 309 Ark. 211, 217, 829 S. W. 2d 412, 415 (1992) ("even though Officer Sudduth might have been under the impression that he was in continuous pursuit of Butler for what he considered to be the crime of disorderly conduct, . . . since the crime is a minor offense, under these circumstances there is no exigent circumstance that would allow Officer Sudduth's warrantless entry into Butler's home for what is concededly, at most, a petty disturbance").

Other courts have concluded that police officers are at least entitled to qualified immunity in these circumstances because the constitutional violation is not clearly established. *E.g., Grenier* v. *Champlin*, 27 F. 3d 1346, 1354 (CA8 1994) ("Putting firmly to one side the merits of whether the home arrests were constitutional, we cannot say that only a plainly incompetent policeman could have thought them permissible at the time," where officers entered a home without a warrant in hot pursuit of misdemeanor suspects who had defied the officers' order to remain outside (internal quotation marks and citation omitted)).

Notwithstanding this basic disagreement, the Ninth Circuit below denied Stanton qualified immunity. In its one-paragraph analysis on the hot pursuit point, the panel

relied on two cases, one from this Court, *Welsh* v. *Wisconsin*, 466 U. S. 740, 750 (1984), and one from its own, *United States* v. *Johnson*, 256 F. 3d 895, 908 (2001) (en banc) (*per curiam*). Neither case clearly establishes that Stanton violated Sims' Fourth Amendment rights.

In *Welsh*, police officers learned from a witness that Edward Welsh had driven his car off the road and then left the scene, presumably because he was drunk. Acting on that tip, the officers went to Welsh's home without a warrant, entered without consent, and arrested him for driving while intoxicated—a nonjailable traffic offense under state law. 466 U. S., at 742–743. Our opinion first noted our precedent holding that hot pursuit of a fleeing felon justifies an officer's warrantless entry. *Id.,* at 750 (citing *United States* v. *Santana*, 427 U. S. 38, 42–43 (1976)). But we rejected the suggestion that the hot pursuit exception applied: "there was no immediate or continuous pursuit of [Welsh] from the scene of a crime." 466 U. S., at 753. We went on to conclude that the officers' entry violated the Fourth Amendment, finding it "important" that "there [was] probable cause to believe that only a minor offense . . . ha[d] been committed." *Ibid.* In those circumstances, we said, "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned." *Ibid.* But we did not lay down a categorical rule for all cases involving minor offenses, saying only that a warrant is "usually" required. *Id.*, at 750.

In *Johnson*, police officers broke into Michael Johnson's fenced yard in search of another person (Steven Smith) whom they were attempting to apprehend on five misdemeanor arrest warrants. 256 F. 3d, at 898–900. The Ninth Circuit was clear that this case, like *Welsh*, did not involve hot pursuit: "the facts of this case simply are not covered by the 'hot pursuit' doctrine" because Smith had escaped from the police 30 minutes prior and his where-

abouts were unknown. 256 F. 3d, at 908. The court held that the officers' entry required a warrant, in part because Smith was wanted for only misdemeanor offenses. Then, in a footnote, the court said: "In situations where an officer is truly in hot pursuit and the underlying offense is a felony, the Fourth Amendment usually yields [to law enforcement's interest in apprehending a fleeing suspect]. See [*Santana*, *supra*, at 42–43]. However, in situations where the underlying offense is only a misdemeanor, law enforcement must yield to the Fourth Amendment in all but the 'rarest' cases. *Welsh*, [*supra*, at 753]." *Johnson, supra*, at 908, n. 6.

In concluding—as it must have—that Stanton was "plainly incompetent," *al-Kidd*, 563 U. S., at ___ (slip op., at 12), the Ninth Circuit below read *Welsh* and the footnote in *Johnson* far too broadly. First, both of those cases cited *Santana* with approval, a case that *approved* an officer's warrantless entry while in hot pursuit. And though *Santana* involved a felony suspect, we did not expressly limit our holding based on that fact. See 427 U. S., at 42 ("The only remaining question is whether [the suspect's] act of retreating into her house could thwart an otherwise proper arrest. We hold that it could not"). Second, to repeat, neither *Welsh* nor *Johnson* involved hot pursuit. *Welsh, supra*, at 753; *Johnson, supra*, at 908. Thus, despite our emphasis in *Welsh* on the fact that the crime at issue was minor—indeed, a mere nonjailable civil offense—nothing in the opinion establishes that the seriousness of the crime is equally important *in cases of hot pursuit*. Third, even in the portion of *Welsh* cited by the Ninth Circuit below, our opinion is equivocal: We held not that warrantless entry to arrest a misdemeanant is never justified, but only that such entry should be rare. 466 U. S., at 753.

That is in fact how two California state courts have read *Welsh*. In both *People* v. *Lloyd*, 216 Cal. App. 3d 1425,

1430, 265 Cal. Rptr. 422, 425 (1989), and *In re Lavoyne M.*, 221 Cal. App. 3d 154, 159, 270 Cal. Rptr. 394, 396 (1990), the California Court of Appeal refused to limit the hot pursuit exception to felony suspects. The court stated in *Lloyd*: "Where the pursuit into the home was based on an arrest set in motion in a public place, the fact that the offenses justifying the initial detention or arrest were misdemeanors is of no significance in determining the validity of the entry without a warrant." 216 Cal. App. 3d, at 1430, 265 Cal. Rptr., at 425. It is especially troubling that the Ninth Circuit would conclude that Stanton was plainly incompetent—and subject to personal liability for damages—based on actions that were lawful according to courts in the jurisdiction where he acted. Cf. *al-Kidd*, *supra*, at \_\_\_ (KENNEDY, J., concurring) (slip op., at 2–4).

Finally, our determination that *Welsh* and *Johnson* are insufficient to overcome Stanton's qualified immunity is bolstered by the fact that, even after *Johnson*, two different District Courts in the Ninth Circuit have granted qualified immunity precisely because the law regarding warrantless entry in hot pursuit of a fleeing misdemeanant is not clearly established. See *Kolesnikov* v. *Sacramento County*, No. S–06–2155, 2008 WL 1806193, \*7 (ED Cal., Apr. 22, 2008) ("since *Welsh*, it has not been clearly established that there can never be warrantless home arrests in the context of a 'hot pursuit' of a suspect fleeing from the commission of misdemeanor offenses"); *Garcia* v. *Imperial*, No. 08–2357, 2010 WL 3834020, \*6, n. 4 (SD Cal., Sept. 28, 2010). In *Garcia*, a case with facts similar to those here, the District Court distinguished *Johnson* as a case where "the officers were not in hot pursuit of the suspect, had not seen the suspect enter the neighbor's property, and had no real reason to think the suspect was there." 2010 WL 3834020, \*6, n. 4. Precisely the same facts distinguish this case from *Johnson*: Stanton *was* in hot pursuit of Patrick, he *did* see Patrick enter Sims'

property, and he had every reason to believe that Patrick was just beyond Sims' gate. App. to Pet. for Cert. 6–7, 17.

To summarize the law at the time Stanton made his split-second decision to enter Sims' yard: Two opinions of this Court were equivocal on the lawfulness of his entry; two opinions of the State Court of Appeal affirmatively authorized that entry; the most relevant opinion of the Ninth Circuit was readily distinguishable; two Federal District Courts in the Ninth Circuit had granted qualified immunity in the wake of that opinion; and the federal and state courts of last resort around the Nation were sharply divided.

We do not express any view on whether Officer Stanton's entry into Sims' yard in pursuit of Patrick was constitutional. But whether or not the constitutional rule applied by the court below was correct, it was not "beyond debate." *al-Kidd*, *supra*, at ___ (slip op., at 9). Stanton may have been mistaken in believing his actions were justified, but he was not "plainly incompetent." *Malley*, 475 U. S., at 341.

The petition for certiorari and respondent's motion for leave to proceed *in forma pauperis* are granted, the judgment of the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*