M. SMITH, Circuit Judge,
concurring in part, and dissenting in part, with whom O’SCANNLAIN, TALLMAN, and BYBEE, Circuit Judges, join in full, and with whom KOZINSKI, Chief Judge, and GRABER and GOULD, Circuit Judges, join as to Part I, which is the opinion of the court:
A majority of the en banc court agrees that Chief McIntosh and Officer Prock (the officers) are entitled to qualified immunity with respect to C.B.’s unlawful seizure claim. A reasonable officer would not have known that taking a child in C.B.’s situation into temporary custody was unreasonable, and therefore unconstitutional. However, I respectfully dissent from the majority’s conclusion denying the officers qualified immunity with respect to C.B.’s excessive force claim. In my view, the officers are entitled to qualified immunity on both of C.B.’s Fourth Amendment claims because the constitutional rights at issue in this case were neither clearly established nor “obvious” at the time C.B. was taken into temporary custody.
To determine whether an officer is entitled to qualified immunity, we consider (1) whether he violated a constitutional right and (2) whether the constitutional right was clearly established. Pearson v. Callahan, 555 U.S. 223, 232, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). “[C]ourts should define the ‘clearly established’ right at issue on the basis of the ‘specific context of the case.’ ” Tolan v. Cotton, — U.S.-, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (per curiam) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Our court, however, has been singled'out and chastised by the Supreme Court for our propensity to improperly find “clearly established” rights. Specifically, the Court has mandated that “courts — and the Ninth Circuit in particular — not ... define clearly established law at a high level of generality.” Ashcroft v. al-Kidd, — U.S.-, 131 S.Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011) (emphasis added) (internal citation omitted).
Despite the Court’s clear instruction that we not “define clearly established law at a high level of generality,” the majority’s hurried discussion of the second prong of the qualified immunity analysis does just that. Specifically, the majority defines the relevant law as requiring the use of force to be “carefully calibrated to respond to the particulars of a case....”[1] But this very general statement clearly does not provide “fair warning” to a reasonable officer that handcuffing C.B. to take him into temporary custody violates his Fourth Amendment rights. See Tolan, 134 S.Ct. at 1866; Brosseau v. Haugen, *1034 543 U.S. 194, 198-99, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam).
I respectfully disagree with the majority’s characterization of these facts as an “obvious violation” of C.B.’s constitutional rights, and with its conclusion that this case is not therefore subject to the Court’s admonitions against defining “clearly established law” in overly general terms. I acknowledge that the Court has recognized that general standards can create a “clearly established]” right in an “obvious case,” even “without a body of relevant case law.” See Brosseau, 543 U.S. at 199, 125 S.Ct. 596. But the facts of this case, even when viewed in the light most favorable to C.B., see Harper v. City of Los Angeles, 533 F.3d 1010, 1021 (9th Cir.2008), do not come close to constituting an “obvious” violation of a “clearly established]” right. See Brosseau, 543 U.S. at 199, 125 S.Ct. 596.
I. Unlawful Seizure Claim
Assuming New Jersey v. T.L.O.’s reasonableness standard applies, as my colleagues do, C.B. cannot show that a reasonable officer would have understood that taking him into temporary custody was unreasonable, and therefore unconstitutional. See Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); New Jersey v. T.L.O., 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).
When analyzing whether an individual’s Fourth Amendment rights were violated, we must determine whether the seizure was reasonable under “all the circumstances.” T.L.O., 469 U.S. at 341, 105 S.Ct. 733. Qualified immunity insulates the officers from liability unless “existing precedent ... ha[s] placed the statutory or constitutional question beyond debate.” al-Kidd, 131 S.Ct. at 2083.
Viewed in its entirety, the record reveals that the situation confronting the officers did not present an “obvious” violation of C.B.’s constitutional rights. The circumstances facing the officers when they decided to take C.B. into temporary custody are as follows. First, officers knew that school officials had reported that C.B. was a “runner” and “out of control.” Second, although Judge Paez describes C.B. as “compliant,” C.B. himself admitted that he completely ignored Officer Prock’s questions for three and a half minutes. Third, the officers did not know exactly which medication C.B. had failed to take. But a reasonable officer would have evaluated Coach Sinclair’s statements in context, and would likely have believed that Coach Sinclair stated that C.B. did not take his medication because it was related to his behavior — the very reason why the officers were called to the school in the first place.
A reasonable officer in this situation, faced with a juvenile who (a) was reportedly a “runner,” (b) was “out of control,” (c) ignored the officer’s questions, and (d) had not taken his medication, would not have known that taking such a juvenile into temporary custody in order to transport him safely to his uncle was an “obvious” violation of his constitutional rights.
Judge Paez attempts to characterize this situation as an “obvious” violation of C.B.’s constitutional rights by emphasizing that C.B. was a “compliant and calm 11-year-old child,” and that the officers had “[no] knowledge of disobedience.” However, C.B. had resisted the officers by ignoring their questions and was reported by the school as out of control, regardless of how he appeared at the exact moment when the officers took him into temporary custody. And although a reasonable officer would have observed that C.B. was young, age alone does not impose a complete bar on taking an individual into temporary custody, or on believing a school official’s report.
*1035 Judge Paez also notes that the decision to take C.B. into temporary custody was made “sans any police investigation.” Respectfully, this characterization fails to address several important points. The facts show that the officers did investigate by obtaining information from Coach Sinclair and attempting to question C.B., who refused to respond. Additionally, taking C.B. into custody without any further investigation was not an obvious violation of his constitutional rights because clearly established law at the time of the seizure did not mandate any additional investigation, nor did it preclude reasonable reliance on the statements of school officials. See T.L.O., 469 U.S. at 346, 105 S.Ct. 733.
If we were to hold that the officers’ conduct was an “obvious violation,” we would effectively establish a new rule that police officers in a situation similar to this one must undertake an independent investigation whenever they observe behavior that appears in any way inconsistent with a school official’s report. Such a requirement would be unworkable in the real world of law enforcement and school administration. Does an officer who is told by a school official that a student is a runner and has not taken his medications, but who later encounters the student seated and quiet, need to undertake an investigation because the student is not running or “out of control” at that time? What would that investigation entail? Would it require reviewing the student’s record with school officials to determine what being a “runner” means in that particular student’s situation? Would it involve talking with school counselors, teachers, or physicians who have dealt with the student to better understand the severity of the student’s problems? By characterizing the officers’ conduct as an “obvious violation” of constitutional rights, the dissent would require an officer to undertake such an uncabined investigation prior to responding to these situations, or risk personal financial liability if he did not. It would disincentivize officers from responding to calls for help from school officials under similar circumstances.
But the officers’ conduct was not an “obvious violation” of C.B.’s constitutional rights. Under “all the circumstances,” T.L.O., 469 U.S. at 341, 105 S.Ct. 733, a reasonable officer would not have understood that taking C.B. into temporary custody violated his rights. The Supreme Court has been pellucidly clear that the purpose of qualified immunity is to give officers “breathing room” in uncertain situations. Stanton v. Sims, — U.S. -, 134 S.Ct. 3, 5, 187 L.Ed.2d 341 (2013) (per curiam) (quoting al-Kidd, 131 S.Ct. at 2085). Accordingly, the officers are entitled to qualified immunity on the unlawful seizure claim.[2]
*1036 II. Excessive Force Claim
I respectfully disagree with the majority’s conclusion that the scope of C.B.’s right to be free from excessive force was clearly established. The majority gives inadequate weight to the Court’s directive that “clearly established law” not be defined at a high level of generality, see al-Kidd, 131 S.Ct. at 2084, for it was far from “obvious” that handcuffing C.B. — a known “runner” reported to be “out of control”— constituted excessive force. Rather, assuming without deciding that Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), controls in this situation, handcuffing C.B. was clearly reasonable when balanced against the need to ensure C.B.’s safety by preventing him from fleeing or injuring himself.
The “reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.” Id. at 396, 109 S.Ct. 1865 (internal quotation marks omitted). The force used by officers must be objectively reasonable under the circumstances, and need not be the least intrusive means available to them. Id. at 397, 399, 109 S.Ct. 1865; Luchtel v. Hagemann, 623 F.3d 975, 982 (9th Cir.2010). “The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.” Graham, 490 U.S. at 397-98, 109 S.Ct. 1865. In determining whether force, in-eluding the use of handcuffs, is reasonable, we consider, among other things, whether the individual poses an immediate threat to the safety of the officers or others, and whether he is attempting to evade arrest by flight. See id. at 396, 109 S.Ct. 1865.
There is no clearly established law indicating that handcuffing C.B. to transport him safely from school grounds to his uncle’s business was not objectively reasonable under the circumstances. See id. at 399, 109 S.Ct. 1865. The majority characterizes C.B. as a “small, calm child.” But when the officers encountered C.B., the school had reported that C.B. was “out of control,” and Coach Sinclair had stated that he was a “runner.” Particularly in light of C.B.’s refusal to answer the officers’ questions, a reasonable officer would have taken the school officials’ concerns seriously. The fact that C.B. was sitting at the time the officers encountered him does not contradict Coach Sinclair’s statement that he was a runner. A reasonable officer would not have known that encountering C.B. sitting down and not responding to questions would necessitate a detailed investigation into the veracity and meaning of Coach Sinclair’s statement before using handcuffs, especially in light of the fact that the reasonableness inquiry allows officers to make split-second judgments in uncertain situations. See id. at 397-98, 109 S.Ct. 1865.
Finally, although the majority characterizes C.B.’s unresponsiveness to Officer Prock’s questioning as mere silent obedience, a reasonable officer could have viewed C.B.’s refusal to answer the questions as an act of defiance.[3] Indeed, offi *1037 cers are trained that such unresponsive behavior may be a “cue[] to escalation,” indicating that the individual may be looking for an opportunity to flee. Because a busy roadway abuts C.B.’s schoolyard, the consequences of ignoring Coach Sinclair’s warning and C.B.’s unresponsive behavior, and spending time conducting an investigation, could have been serious, or even fatal.
In this situation, a reasonable officer, relying on the statement of Coach Sinclair that C.B. is a “runner,” see T.L.O., 469 U.S. at 346, 105 S.Ct. 733, could have determined that C.B. would pose a danger to himself if he ran into the roadway, and that he would be at risk of injury if he had to be apprehended while running. A reasonable officer, relying on precedent establishing that handcuffs may be appropriate to prevent flight, see id.; Meredith v. Erath, 342 F.3d 1057, 1063 (9th Cir.2003), would not have known that it was a constitutional violation to place C.B. in handcuffs to ensure his safety.[4]
Additionally, it was not clearly established that keeping a juvenile in C.B.’s situation handcuffed for approximately thirty minutes while the officers transported him to his uncle was unconstitutional. A reasonable officer could have believed that it was permissible to keep C.B. handcuffed to ensure his safety in light of the fact that C.B. could have hurt himself in the car, or attempted to flee while the officer was removing the handcuffs before placing C.B. in the car. Moreover, handcuffing C.B. to prevent flight comports with standard police procedure. Although the City of Sonora’s policy recommends that handcuffs generally should not be used for a juvenile under the age of 14, it also provides that officers may in their discretion handcuff a juvenile if he is of the state of mind that suggests a reasonable probability of his desire to escape or that he may injure himself. This policy is fully consistent with Supreme Court precedent. See Graham, 490 U.S. at 396, 109 S.Ct. 1865.
Although handcuffing a juvenile is not a matter to be taken lightly, neither is the juvenile’s safety. Under the majority’s reasoning, officers’ legitimate concerns for a child’s safety are no longer sufficient to justify handcuffing, and officers are now potentially liable for monetary damages if they use handcuffs out of concern for a child’s safety. But had an officer in this situation not handcuffed C.B., and had C.B. run into the roadway and been killed or injured by a passing vehicle, the officer, knowing that C.B. was a runner, would surely have been liable due to his failure to ensure C.B.’s safety. Under the majority’s new rule, officers are now damned if they do, and damned if they don’t, when dealing with schoolchildren who are known runners.
Because this case is not an “obvious” one where general standards clearly establish C.B.’s rights, a reasonable officer would not have known that handcuffing C.B. to safely take him into temporary custody violated his constitutional rights.
The Supreme Court has taught that qualified immunity protects “all but the plainly incompetent or those who knowing *1038 ly violate the law.” al-Kidd, 131 S.Ct. at 2085 (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).[5] Here, because there is no indication that the officers knowingly violated the law, the majority, in denying qualified immunity, must view the officers as “plainly incompetent.” I find no evidence that either officer is “plainly incompetent.” Because C.B.’s constitutional rights were not clearly established, the district court improperly denied qualified immunity to the officers. I therefore respectfully dissent from the majority’s contrary conclusion denying qualified immunity to the officers with respect to C.B.’s excessive force claim. •

. Judge Berzon states that our case law requires police officers to have some cause to take children into custody. She cites language from Crowe v. County of San Diego, that a police officer was not entitled to qualified immunity when he "failed to provide any justification” for a seizure. 608 F.3d 406, 439 (9th Cir.2010). At issue there was the detention at a police station of the parents of a murder victim. Id. Additionally, it was the district court that had denied summary judgment due to the officer’s failure to provide any justification. We affirmed, but on the ground that the parents did not consent to the detention because the officer had pointed a gun at them.
In Henderson v. Mohave County, also cited by Judge Berzon, we denied qualified immunity to officers who seized a child after ignoring her mother’s court order showing that she had custody. 54 F.3d 592, 595 (9th Cir. 1995).
Relying on these cases, Judge Berzon concludes that no reasonable officer would have believed that there was cause to take C.B. into custody under section 601 of the Welfare and Institutions Code. Even assuming Crowe applies here, it does not require that a state law *1036 provide justification for the seizure. Rather, under the Fourth Amendment, the seizure need only be reasonable under all the circumstances. See T.L.O., 469 U.S. at 341, 105 S.Ct. 733. Unlike in Henderson, where the officers had no justification for their actions, here, a reasonable officer would have believed he was justified in taking C.B. into temporary custody based on the information available to him, including the school’s report that he was out of control and had not taken his medication.

. C.B. admitted that he completely ignored Officer Prock’s questions for three and a half minutes.

. Judge Paez notes that Chief McIntosh believed that it was not likely that C.B. could run away from the officers. However, Chief McIntosh’s subjective beliefs are not relevant as ‘‘[t]he Fourth Amendment inquiry is one of objective reasonableness under the circumstances, and subjective concepts ... have no proper place in that inquiry.” Graham, 490 U.S. at 399, 109 S.Ct. 1865 (internal quotation marks omitted). Moreover, even if C.B. could not have succeeded in running away, a reasonable officer could have believed it was likely that C.B. would have tried to run away, given his history as a runner. In such a case, the officer would have needed to apprehend C.B., which would have posed a risk of injury.

. The Supreme Court’s recent case law illustrates the substantial protection that qualified immunity affords police officers. Although each case is decided based on its specific facts, the reality is that the Supreme Court in the recent past has rarely denied qualified immunity to police officers. As one scholar has observed, before the recent reversal of a grant of qualified immunity in Tolan, 134 S.Ct. 1861, the Court had not ruled against a police officer in a qualified immunity case since Groh v. Ramirez, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004), decided nearly a decade earlier. See Will Baude, Tolan v. Cotton — when should the Supreme Court interfere in ‘factbound’ cases?, The Washington Post, The Volokh Conspiracy (May 7, 2014, 9:40 AM), http ://www.washingtonpost. com/ news/volokhconspiracy/wp/2014/05/07/tolan-v-cotton-when-should-the-supreme-court-interfere-in-factbound-cases/?tid=pm_ nationaLpop (last visited September 22, 2014).