TRAXLER, Circuit Judge,
concurring:
I agree with Judge Thacker that the district court correctly granted summary *224 judgment against Maney on qualified-immunity grounds because it was not clearly established on the night in question that Maney’s conduct was unconstitutional. Because my analysis of this issue differs somewhat from Judge Thacker’s, I write separately regarding that issue.[1]
The doctrine of qualified immunity “balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.” Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). It “gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.” Stanton v. Sims, — U.S. -, 134 S.Ct. 3, 5, 187 L.Ed.2d 341 (2013) (per curiam) (internal quotation marks omitted).
In determining whether an officer is entitled to summary judgment on the basis of qualified immunity, courts engage in a two-pronged inquiry.[2] See Tolan v. Cotton, — U.S. -, 134 S.Ct. 1861, 1865, 188 L.Ed.2d 895 (2014) (per curiam). The first asks whether the facts, viewed in the light most favorable to the plaintiff, show that the officer’s conduct violated a federal right. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
The second prong of the qualified-immunity inquiry asks whether the right was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional. See Ridpath v. Board of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006). “We do not require a case directly on point” in order to conclude that the law was clearly established so long as “existing precedent [has] placed the statutory or constitutional question beyond debate.” Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).
A claim that a police officer employed excessive force is analyzed under the Fourth Amendment under an “objective reasonableness” standard, Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); see Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that “all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other ‘seizure’ of a free citizen should be analyzed under the Fourth Amendment and its ‘reasonableness’ standard”). The officer’s actions do not amount to excessive force if they “are ‘objectively reasonable’ in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.” Graham, 490 U.S. at 397, 109 S.Ct. 1865. In considering the reasonableness of an officer’s actions, we must consider the facts at the moment that the challenged force was employed. See Henry, 652 F.3d at 531.
Evaluating the reasonableness of the officer’s actions “requires a careful balancing of the nature and quality of the intrusion on the individual’s Fourth Amendment interests against the countervailing governmental interests at stake.”' Graham, 490 U.S. at 396, 109 S.Ct. 1865 (internal quota *225 tion marks omitted). To properly consider the reasonableness of the force employed we must “view it in full context, with an eye toward the proportionality of the force in light of all the circumstances.” Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005) (internal quotation marks omitted). We also must give “careful attention to the facts and circumstances of each ... case, including” three factors in particular: “the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.” Graham, 490 U.S. at 396, 109 S.Ct. 1865. Moreover, “[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.” Id. at 396-97,109 S.Ct. 1865.
Considering these factors in regard to Garrison’s actions, I ■ cannot say that a reasonable officer in Garrison’s position would have known that his actions violated the Fourth Amendment, To begin, the crimes at issue were violent. The suspect that Officer Garrison was tracking had committed a robbery and assaulted a woman in the process. Indeed, common-law robbery constitutes a felony in North Carolina. See N.C. Gen. Stat. § 14-87.1; see also Parker v. Gerrish, 547 F.3d 1, 9 (1st Cir. 2008) (“Though driving while intoxicated is a serious offense, it does not present a risk of danger to the arresting officer that is presented when an officer confronts a suspect engaged in an offense like robbery or assault.”).
Second, Garrison had reason to perceive that the suspect he-was tracking was a significant threat to his own safety and the safety of his backup officer. The suspect already had disregarded public safety by assaulting a female during his commission of the robbery. And he had time to gain a tactical advantage over the officers by taking a position of cover in anticipation of their arrival. In the darkness of the night, Garrison justifiably feared that he and his backup were vulnerable to a surprise attack.
Finally, there can be no doubt that the suspect Garrison was tracking was attempting to flee.
When Bikkel suddenly lunged out at a person apparently hiding in the bushes, Garrison understandably believed Bikkel had found the suspect. With Garrison having been caught by suiprise, attempting to negotiate the darkness, and suddenly faced with a figure hiding in an area where Garrison expected to find the robbery suspect, Garrison reasonably could have concluded that the person posed a risk of immediate danger to his and his backup’s safety. See Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst, 810 F.3d 892, 905 (4th Cir.) (noting that “a police officer may only use serious injurious force ... when an objectively reasonable officer would conclude that the circumstances present a risk of immediate danger that could be mitigated by the use of force”), cert. denied, — U.S.-, 137 S.Ct. 61, 196 L.Ed.2d 32 (2016). And this perception of severe danger would not necessarily have been allayed by the discovery that the man hiding in the bushes was not the robbery suspect. As Judge Thacker ably explains, Garrison had reason to suspect that the man in the bushes was acting in concert with the suspect and that the suspect was still nearby.[3] See ante at 18- *226 19. Facing a suddenly developing threat, Garrison could have reasonably believed that calling Bikkel off before confirming that the hiding man was not armed would subject him and his backup to significant danger, and thus that prolonging the seizure a few seconds was justified. Cf. Kuha v. City of Minnetonka, 365 F.3d 590, 600-01 (8th Cir. 2004) (holding, regarding officers pursuing a suspect who had fled from a traffic stop and given no indication that he was armed, that no jury could rationally conclude that the officers acted unreasonably in extending dog-bite seizure for 10 to 15 seconds while the officer handling the dog demanded that the suspect raise his hands), abrogated on other grounds, Szabla v. City of Brooklyn Park, 486 F.3d 385, 395-96 (8th Cir. 2007) (en banc). “The Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm.” Elliott v. Leavitt, 99 F.3d 640, 641 (4th Cir. 1996).
While the violence that Bikkel had the potential to inflict—and did inflict—was no doubt substantial, a reasonable officer in Garrison’s position would distinguish his situation from one in which an officer “siccfed] a police dog on a manifestly unarmed and compliant suspect.” Cf Kuha, 365 F.3d at 601 (emphasizing this difference in holding that no rational jury could find officer’s actions in prolonging the dog-bite seizure were unconstitutional). Indeed, Garrison promptly called off his dog only seconds later, as soon as he was able to see that Maney was not holding a weapon. See J.A. 284 (testimony that Garrison took Bikkel off in one to two seconds once he saw Maney was not holding a weapon). Cf. Becker v. Elfreich, 821 F.3d 920, 929 n.2 (7th Cir. 2016) (holding that continuation of dog-bite seizure constituted excessive force but emphasizing that the case did “not involve a split-second delay between the officer pulling [the suspect] to the ground and directing” the dog to end the seizure). Furthermore, nothing in the record indicates that Garrison took an unreasonable amount of time to make that determination.
Maney maintains that Kopf v. Wing, 942 F.2d 265 (4th Cir. 1991), would have alerted any reasonable officer that it was unconstitutional to demand that Maney show his hands before calling Bikkel off. Maney particularly focuses on our statement in that case that a jury could rationally “find it objectively unreasonable to require someone to put his hands up and calmly surrender while a police dog bites his scrotum.” Id. at 268. But the context of that statement shows that it did not establish the unconstitutionality of Garrison’s actions. In Kopf the biting of the suspect to which we referred occurred after the officer handling the dog realized that the suspect was not holding a weapon. See id. at 266 (“[The officer handling the dog] did not order [the dog] to release; instead, noting that [the suspect] had no weapon in his hands, [the officer handling the dog] ran back around the shed to assist [the two other officers]. [The suspect] struggled with the dog [and the two other officers]. By this time, [the dog] was biting [the suspect] in the thigh and groin; still [the officer handling the dog] allowed the biting' to go on.”). Our statement was made in the context of explaining that a jury, in determining the reasonableness of the force the officers employed, might rationally conclude that the suspect should not be faulted under those circumstances for continuing to offer some resistance to the dog’s *227 attack. See id. at 268. To a reasonable officer in Garrison’s position, Kopf would have, at most, established that Maney’s refusal to immediately show his hands should not be interpreted as an act of aggression or noncompliance. It would not have alerted him that it would be unconstitutional to briefly prolong the dog-bite seizure while he determined that the man he reasonably viewed as a serious threat to him was not holding a weapon. See Kuha, 365 F.3d at 600-01 (noting that while the officers knew that the officer who made the traffic stop from which the suspect fled had not seen a gun, the officers were nonetheless “reasonably wary of what they might encounter when they found [the suspect],” and they were “reasonably concerned for their safety”).
Maney further argues that Kopf and Vathekan v. Prince George’s County, 154 F.3d 173 (4th Cir. 1998), would have alerted any reasonable officer in Garrison’s position to the fact that Garrison acted unconstitutionally by not giving a verbal warning as he approached the house. He particularly notes that Vathekan stated that “Fourth Circuit precedent existing in 1995 clearly established that failure to give a warning before releasing a police dog is objectively unreasonable in an excessive force context” and that “it was clearly established in 1995 that failing to give a verbal warning before deploying a police dog to seize someone is objectively unreasonable and a violation of the Fourth Amendment.” Id. at 179. In my view, however, these statements were not sufficient to put a reasonable officer on notice a warning was constitutionally required as Garrison approached.
As Bikkel started air scenting across the street from the house and Garrison sensed that the suspect was pretty close, he made the judgment that attempting to be quiet, and thereby retaining the element of surprise, would provide important protection against a sudden and unexpected attack from a suspect whose location Garrison had not yet identified. J.A. 331-32; see Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002) (noting that courts should not “undercut the necessary element of judgment inherent in a constable’s attempts to control a volatile chain of events”). This judgment was certainly not an unreasonable one. Of. Kuha, 365 F.3d'at 603 (reasoning that in situation in which suspect was hiding in a location unknown to the officers, reasonable officer could conclude that “a warning would place the officers at undue risk”; distinguishing Kopf and Va-thekan). And importantly, as Garrison and Bikkel climbed onto the porch, Garrison, unlike the officers in Kopf and Vathekan, did not release his dog. In fact, Garrison shortened Bikkel’s lead from 15 feet to three feet to increase his control over the dog and to reduce the chance that Bikkel would encounter and bite a bystander. On that basis, an officer in Garrison’s position could have reasonably believed he was not violating the rule articulated in Vathekan requiring the issuance of a warning before releasing a dog. Indeed, we relied on this very distinction in Melgar ex rel. Melgar v. Greene, 593 F.3d 348 (4th Cir. 2010). Specifically, we noted the “vast difference between an officer releasing a dog off a leash knowing with a good degree of certainty that it will find and bite its target and an officer exercising substantial control over a leashed animal with the expectation of being able to prevent any injury.” Id. at 358. On that basis, we held that the officer did not violate clearly established law for failure to give verbal warning while tracking with his dog on a 15-foot lead because “the officer expected his control over the animal by means of the leash would render any warning unnecessary.” Id.
Nor do I believe that Kopf and Vathe-kan would have instructed a reasonable *228 officer that a warning—and cessation of the dog-bite seizure—was necessary once Garrison realized the dog had engaged someone. By that time, Garrison was suddenly facing an emergency situation. Despite the breadth of the language from Vathekan requiring warnings before the deployment of a dog, nothing in Vathe-kan—or Kopf—concerned a potential serious and immediate threat to the officer. In Vathekan, when the dog was released, officers had already established a perimeter around the house in which they believed the suspect was located and there clearly was no immediate threat to any of those officers. See 154 F.3d at 176. In Kopf as well, several officers were out of harm’s way and had cornered the suspects behind a shed when the dog was released. See 942 F.2d at 266. Especially considering the fact-intensive nature of the Graham test for excessive force, I do not believe that a reasonable officer in Garrison’s position would have understood those cases to address the present situation, see Estate of Rodgers ex rel. Rodgers v. Smith, 188 Fed.Appx. 175, 182 (4th Cir. 2006) (“Kopf and Vathekan stand at most for the principle that the Fourth Amendment is violated when an officer who faces no immediate threat deploys a police dog without prior warning.” (emphasis in original)).
In sum, for all of the aforementioned reasons, I believe that a reasonable officer in Garrison’s position could have concluded that he was constitutionally justified in prolonging the dog-bite seizure for a few seconds while he confirmed that the man hiding in the bushes was not holding a weapon. I therefore believe the district court properly granted summary judgment to Officer Garrison on the basis of qualified immunity.

. I concur in Part III of Judge Thacker’s opinion, concerning the battery claim.

. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.” Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009),

. Maney argues that the dog-bite seizure, or at least the part that occurred after Officer Garrison realized it was happening, was unconstitutional because it was not supported by *226 reasonable suspicion that Maney was involved in criminal activity, Assuming arguendo that such reasonable suspicion was necessary to justify the brief continuation of the dog-bite seizure, I agree with Judge Thacker that a reasonable officer in Garrison’s position could have believed that requirement was satisfied. See ante at 18-19.