

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0545-20

**KEVIN RATLIFF, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE THIRD COURT OF APPEALS
## LLANO COUNTY

KELLER, P.J., filed a concurring and dissenting opinion in which YEARY and SLAUGHTER, JJ., joined.

Appellant is a police chief who, without a warrant, entered the home of a man named Corey Nutt in order to arrest him. For this and for related acts, Appellant was prosecuted for three criminal offenses, including a felony. The Court concludes, and I agree, that the evidence was not sufficient to show tampering with a governmental record. The remaining question is whether the circumstances were sufficient to prove that the police chief committed the crime of official oppression. The Court finds the evidence sufficient to establish that Appellant intentionally subjected Nutt to arrest that Appellant "knew was unlawful." But because at the time of the entry the law was unsettled

regarding whether Appellant could legally enter the house, it is literally impossible that Appellant "knew" the entry was unlawful.

### 1. *Law requires defendant to know the conduct was unlawful.*

A public servant who acts under color of his office commits official oppression if he:

(1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful; [or]

(2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful.[1]

In conformity with the statutes, the charging instruments against Appellant for official oppression both required that Appellant knew his conduct was unlawful.

### 2. *Article 14.01 appeared to supply a basis for arrest.*

Officer Harden had claimed that Nutt was intoxicated outside his home in the RV park, which would indicate that Nutt committed the offense of public intoxication.[2] Under Article 14.01, a police officer can arrest a person "without a warrant for any offense committed in his presence or within his view."[3] Even if the arresting officer did not see the offense, this requirement is satisfied if an officer cooperating with the arresting officer saw the commission of the offense.[4] So the fact

---

[1] TEX. PENAL CODE § 39.03(a)(1)-(2). There is another method of committing official oppression that is not relevant here. *See id.* § 39.03(a)(3).

[2] *See* TEX. PENAL CODE § 49.02(a) ("A person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another.").

[3] TEX. CODE CRIM. PROC. art. 14.01(b).

[4] *State v. Martinez*, 569 S.W.3d 621, 630 (Tex. Crim. App. 2019).

that Nutt was inside his home when Appellant arrived does not, standing alone, make the arrest illegal; Appellant could rely on Officer Harden's observation that Nutt committed an offense.

**3. *"Hot pursuit" doctrine appeared to be implicated and arguably justified entry at the time*.**

Article 14.05 provides that, even if a statute authorizes a warrantless arrest, an officer "may not enter a residence to make the arrest unless: (1) a person who resides in the residence consents to the entry; or (2) exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or without a warrant."[5] Nutt did not consent to entry, so the first question here is whether exigent circumstances would have justified entry into Nutt's home. The Supreme Court has recognized "hot pursuit" of a fleeing suspect as an exigent circumstance that allows an officer to enter a home without a warrant.[6]

The Supreme Court has not defined "hot pursuit," but it has addressed occasions when it was absent. In *Welsh*, a car veered off the road and into a field, and the driver walked home before police arrived on the scene.[7] After questioning a witness, the police proceeded to the driver's home, entered it, and arrested him.[8] The Supreme Court found the claim of hot pursuit to be unconvincing on the facts of the case "because there was no immediate or continuous pursuit of the petitioner from the

---

[5] TEX. CODE CRIM. PROC. art. 14.05.

[6] *Kentucky v. King*, 563 U.S. 452, 460 (2011) ("This Court has identified several exigencies that may justify a warrantless search of a home. . . . Police officers may enter premises without a warrant when they are in hot pursuit of a fleeing suspect.").

[7] *Welsh v. Wisconsin*, 466 U.S. 740, 742 (1984).

[8] *Id.* at 742-43.

scene of a crime."[9]

If Officer Harden's statements are believed, this case differs from *Welsh* because Officer Harden followed Nutt home from the scene of the public intoxication. The Court claims that Nutt was not in hot pursuit because Officer Harden stopped pursuit by driving away from the scene after telling Nutt to go back into the residence. But Officer Harden claimed that he had encountered Nutt again after he returned to the scene and that Nutt was still intoxicated. Although Nutt was already in his home when Appellant arrived, Appellant was cooperating with Officer Harden and so he could rely upon Officer Harden's hot pursuit.[10] And the official oppression statute requires that the defendant "know" the conduct is unlawful; it is not enough to be aware of a risk that the conduct is unlawful.[11] Article 14.05 is not specific in delineating what constitutes an exigent circumstance, and absent binding caselaw that hot pursuit to someone's home ends if the officer waits for backup, then Appellant could not *know* that "hot pursuit" was no longer in progress.

The remaining question is whether, when there is probable cause to believe a suspect has committed a minor offense, "hot pursuit" standing alone can justify entry into the home. The Court

---

[9] *Id.*

[10] *See Martinez*, 569 S.W.3d at 630. *See also United States v. Rich*, 795 F.2d 680, 682 (8th Cir. 1986) ("Moreover, the court does not merely look to the actual knowledge of the arresting officer, but to the combined knowledge of all of the officers involved.").

[11] *Compare* TEX. PENAL CODE § 6.03(b) ("A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.") *with id.* § 6.03(c) ("A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.").

points to the fact that the jury charge allowed hot pursuit only for a felony offense, but the issue here is not jury charge error; it is the sufficiency of the evidence. We held in *Malik* that sufficiency of the evidence is not measured by the jury charge actually given but by the elements of the offense as defined by the hypothetically correct jury charge for the case.[12] So the question is what the jury charge should have said on this matter, not what it actually said. As will be discussed below, *Welsh* did not resolve the question of whether hot pursuit after a minor offense can justify entry into a home, and at the time Appellant entered the trailer, courts were sharply divided nationwide on how to answer the question. And, most importantly, the issue was only recently resolved by the United States Supreme Court.

In *Welsh*, the Supreme Court did indicate that the gravity of the crime was a factor that could be considered in determining whether exigent circumstances existed.[13] In discussing "hot pursuit" cases, the Supreme Court remarked that "it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor" and that "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed."[14]

But the reason the Supreme Court ultimately found the claim of hot pursuit to be

---

[12] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[13] *Welsh*, 466 U.S. at 744.

[14] *Id.* at 753.

unconvincing in *Welsh* was the lack of immediate or continuous pursuit from the crime scene.[15]  In *Stanton v. Sims*, the Supreme Court emphasized that *Welsh* had rejected the application of hot pursuit for this very reason.[16]  The Court acknowledged the statements in *Welsh* about minor crimes but said, "[W]e did not lay down a categorical rule for all cases involving minor offenses, saying only that a warrant is 'usually' required."[17]  The Court repeated that *Welsh* was not a "hot pursuit" case and further explained that "despite our emphasis in *Welsh* on the fact that the crime at issue was minor—indeed, a mere nonjailable civil offense—nothing in the opinion establishes that the seriousness of the crime is equally important *in cases of hot pursuit*."[18]

Significantly, *Stanton* was about "qualified immunity."[19]  The issue was whether the law was clearly established that Stanton's pursuit of a fleeing suspect did not justify his warrantless entry into a home when the suspected crime was only a misdemeanor.[20]  The Supreme Court held that the law was not clearly established in that regard.[21]  To the contrary, the Court found that "federal and state courts nationwide are sharply divided on the question whether an officer with probable cause to arrest a suspect for a misdemeanor may enter a home without a warrant while in hot pursuit of that

---

[15] *Id.*

[16] 571 U.S. 3, 8 (2013).

[17] *Id.*

[18] *Id.* at 9 (emphasis in original).

[19] *Id.* at 5-6.

[20] *Id.* at 4-5.

[21] *Id.* at 6-11.

suspect."[22]  The Supreme Court declined to decide that issue but found it enough to say, for the purposes of qualified immunity, that the issue was "not beyond debate."[23]

The Supreme Court recently resolved the issue in *Lange v. California*.[24]  The Court had granted certiorari to determine whether "the pursuit of a fleeing misdemeanor suspect always—or more legally put, categorically—qualifies as an exigent circumstance."[25]  The Court acknowledged that "[c]ourts are divided over whether the Fourth Amendment always permits an officer to enter a home without a warrant in pursuit of a fleeing misdemeanor suspect. Some courts have adopted such a categorical rule, while others have required a case-specific showing of exigency."[26]  The Court concluded that "flight of a suspected misdemeanant does not always justify a warrantless entry into a home."[27]  An officer can enter the home "to prevent imminent harms of violence, destruction of evidence, or escape from the home" but if the officer "has time to get a warrant, he must do so—even though the misdemeanant fled."[28]

It does not matter in this case that the Supreme Court resolved the question as it did.  All that matters here is that the question had not been resolved and courts had been "sharply divided" about it since at least 2013 when *Stanton* was decided.  If the issue was unsettled for purposes of qualified

---

[22]  *Id.* at 6.

[23]  *Id.* at 10-11 (internal quotation marks omitted).

[24] 141 S. Ct. 2011  (June 23, 2021).

[25]  *Id.* at 2016.

[26]  *Id.* at 2017.

[27]  *Id.* at 2024.

[28]  *Id.*

immunity, it was surely also unsettled for purposes of a criminal prosecution for official oppression. Indeed, in settling the issue, the Supreme Court recognized the division among the lower courts, and even the Supreme Court itself was divided on how the issue should be treated.[29] Without settled guidance on the matter, Appellant could not *know*, at the time he acted, that the "hot pursuit" doctrine was inapplicable here. He could not know that his entry into Nutt's home was illegal because the law about what the Fourth Amendment requires in such circumstances was unsettled, and because this Court has not addressed this issue within the context of Article 14.05.

Of course, the jury did not have to believe that Officer Harden was telling the truth, and if Nutt was not outside at all during the second encounter, then Officer Harden could not have been in hot pursuit of him. But even if Officer Harden lied about Nutt being outside during the second encounter, the question would still remain whether Appellant *knew* that Officer Harden's statements were false. Appellant was the police chief, and Officer Harden was an officer under his command. A police chief should ordinarily be able to rely on statements made by his subordinate officers, and nothing in this record indicates that Appellant had a reason to disbelieve Officer Harden at the time Appellant entered Nutt's home. Although there is conflicting evidence about when Appellant arrived on the scene—one witness testified that it was "right after" Officer Shannon while another said he arrived ten or fifteen minutes into the episode—it is undisputed that Officer Harden arrived on the scene first, and Appellant would not have personally observed what happened then.[30] Taking Officer

---

[29] *See id.* at 2028-37 (Roberts, C.J., concurring, joined by Alito, J.) (view that hot pursuit alone justifies entry into the home except in an unusual case).

[30] The whole video lasts about fifteen minutes. Nutt himself testified that when he first opened his door, he did not see or hear Appellant and had no reason to believe Appellant was there. And Appellant does not appear on the video until just before he entered the trailer. It is nevertheless

Harden's statements at face value, as Appellant was entitled to do at the time, Appellant had reason to believe Nutt had been outside during the second encounter and fled into his home.

**4.** ***The other circumstantial evidence relevant to Appellant's mental state does negate arguable "hot pursuit" basis.***

The court of appeals cited omissions from the offense report of which Appellant was aware as evidence of consciousness of guilt, and the court pointed to Appellant having training on the law of search and seizure.[31]  Those facts do not suggest that Appellant knew at the time he entered Nutt's home that Officer Harden lied about Nutt being outside during the second encounter and fleeing into the trailer.  And whatever else those facts might say about Appellant's mental state at the time he reviewed the offense report or at the time he entered Nutt's trailer, it remains the case that there was no binding authority definitively establishing that entry after such flight was illegal.  Without such authority, Appellant could not *know* that the entry was illegal.  Consequently, the evidence is insufficient to support the official-oppression convictions.

I would hold that the evidence was insufficient to support all of Appellant's convictions. I join the part of the Court's opinion that finds the evidence insufficient to support the conviction for tampering with a governmental record, and I dissent from the portion of the Court's opinion that upholds Appellant's convictions for official oppression.

Filed: March 16, 2022

Publish

---

true that the jury was entitled to believe that Appellant arrived "right after" Officer Shannon.

[31] *Ratliff v. State*, 604 S.W.3d 65, 81-82 (Tex. App.—Austin 2020).